# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In Re: | ) | CHAPTER 13 |
| | ) | CASE NO. 17-10441 |
| Barbara J. Slade-Lanier | ) | Judge Arthur I. Harris |
| | ) | |
| | ) | **MOTION TO SELL REAL ESTATE** |
| | ) | **WHILE IN AN ACTIVE** |
| | ) | **CHAPTER 13** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Now comes the Debtor, by and through counsel, Melissa L. Resar, and respectfully requests this Court to grant this motion to sell real estate located at 15802 Talford Ave., Cleveland, Ohio 44128. The Debtor is proposing to sell the real estate because she holds a life estate interest in the property and the relatives that occupy the property no longer wish to maintain the property.

The purchase agreement for the property is for $50,000.00. The county has valued the property at $71,900.00, however, the property is valued at $51,000.00 on the website Zillow. Debtor believes the purchase price is fair due to the current condition of the property, the current economic climate, and the market values of properties in the area.

The Debtor is seeking permission to sell the home to a buyer in the ordinary course. Debtor has no previous relationship with this buyer.

The breakdown of the sales proceeds are as follows: The contract sales price is $50,000.00; $4,499.25 will pay settlement charges, $300.00 will be held for the final water/sewer bill, $1,088.16 will be used to pay property taxes. The sellers should net $42,612.59 in cash after the sale is completed. Debtor will pay all of her proceeds from the sale into her plan.

Attached as Exhibit "A" is the purchase contract, and Exhibit "B" is the estimated

Settlement Statement.

    Debtor prays this Motion is granted and she is permitted to sell the real estate.

                            Respectfully Submitted,

                            /s/Melissa L. Resar
                            Melissa L. Resar (0071963)
                            Rauser & Associates
                            Attorney for Debtors
                            614 W. Superior Avenue, Suite 950
                            Cleveland, Ohio 44113
                            (216) 263-6200
                            mresar@ohiolegalclinic.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of December, 2018 a true and correct copy of this Motion to Sell Real Estate was served:

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

Melissa L. Resar, on behalf of Debtor, at mresar@ohiolegalclinic.com

Lauren A. Helbling, on behalf of the Trustee, at ch13trustee@ch13cleve.com

And by regular U.S. Mail, postage prepaid, on:

Barbara J. Slade-Lanier, Debtor, at 1014 Evangeline Rd., Cleveland, Ohio 44110

                            /s/Melissa L. Resar
                            Melissa L. Resar (0071963)
                            Rauser & Associates
                            Attorney for Debtor
                            614 W. Superior Avenue, Suite 950
                            Cleveland, Ohio 44113
                            (216) 263-6200

Exhibit "A"




**RUSSELL REAL ESTATE SERVICES**
**RESIDENTIAL PURCHASE AGREEMENT**
Administrative Office: 12190 Pearl Road, Strongsville Ohio 44136

1. **BUYER:** The undersigned  Joseph Ben Chlouch  offers to buy the
2. **PROPERTY:** Located at  15802 Talford Ave
3. City  Cleveland  , Ohio, Zip Code  44128
4. Permanent Parcel No.  140-03-081  , and further described as being: SFR
5.
6. The property, which BUYER accepts in its "AS IS" PRESENT PHYSICAL CONDITION, shall include the land, all
7. appurtenant rights, including but not limited to any and all mineral rights, privileges and easements, and all buildings
8. and fixtures, including such of the following as are now on the property: all electrical, heating, plumbing and bathroom
9. fixtures; all window and door shades, blinds, awnings, screens, storm windows, curtain and drapery fixtures; all
10. landscaping, disposal, TV antenna, rotor and control unit, smoke detectors, garage door opener(s) and   controls;
11. all permanently attached carpeting. The following selected items shall also remain: ☐satellite dish; ☐range and
12. oven; ☐microwave; ☐kitchen refrigerator; ☐dishwasher; ☐washer; ☐dryer; ☐radiator covers; ☐window air
13. conditioner; ☒central air conditioning; ☐gas grill; ☐fireplace tools; ☐screen, ☐glass doors and ☐grate; ☐all existing
14. window treatments; ☐ceiling fan(s); ☐wood burner stove inserts; ☐gas logs; and ☐water softener.
15. Also included: Offer subject to seller providing copy of lease and tenant contact information
16. Fixtures Not Included:
17. **PRICE:** BUYER shall pay the sum of.................................................. $ ~~48000~~ $50,000
18. Earnest money payable to
19. in the form of a ☐check ☒note, the receipt of which is hereby acknowledged
20. by RUSSELL REAL ESTATE SERVICES. Note shall be redeemed (as stated on
21. lines (23 -25). All monies received to be deposited into an escrow/trust account   500
22. and to be credited against the Purchase Price.................................................. $
23. NOTE TO BE REDEEMED WITHIN FOUR DAYS OF WRITTEN ACCEPTANCE
24. OR 24 HOURS AFTER SATISFACTORY COMPLETION OF ALL QUALIFIED
25. INSPECTIONS, IF APPLICABLE.
26. Additional monies to be placed in escrow with a responsible lending institution, ~~47500~~ $49,500
27. title or trust company.................................................. $
28. Execute and deliver note secured by a first mortgage on said premises
29. in the amount of ☐Conventional ☐FHA ☐VA ☒OTHER.......................... $
30. Additional Terms: cash offer. Walk through upon acceptance. Seller to provide proof tenant paying rent
31. subject to bankruptcy court approval.
32.
33. **FINANCING:** BUY___ a written application for the above mortgage loan; order the appraisal and provide
34. verification to SELLER of said application and order of appraisal within _____ days and shall obtain a
35. commitment for that loan no later than _____ days after acceptance of this offer. If first mortgage financing
36. cannot be obtained despite BUYER Good faith efforts, Russell Real Estate Services reserves the right to arrange
37. acceptable financing. If first mortgage financing cannot be obtained then this Agreement shall be null and void. Upon
38. signing of a mutual release by SELLER and BUYER, the earnest money deposit shall be returned to the BUYER without
39. any further liability of either party to the other or to the Brokers and their agents.
40. **CLOSING:** All funds and documents necessary for the completion of this transaction shall be placed in escrow
41. with the lending institution or escrow company on or before ~~July 25th, 2018~~ 1/24/2019 ___ tle shall be
42. recorded on or about  ~~July 25th, 2018~~ 1/24/2019
43. **POSSESSION:** SELLER shall deliver possession to BUYER of the property within ___ days by  5  ☐AM ☒PM
44. after the title has been recorded. Subject to Buyer's rights. If any, the premises may be occupied by the SELLER free
45. for ___ days. Additional ___ days at a rate of $___ per day. Insurance coverage and payment and collection
46. of fees for use and occupancy after recording of title are the sole responsibility of SELLER and BUYER.

SELLER(S) INITIALS AND DATE  AS 7/8/18
BUYER(S) INITIALS AND DATE  JB 07/07/2018

RESIDENTIAL PURCHASE AGREEMENT 04-01-17
Page 1 of 6

(margin initials/dates: JBC, AS 12/2/18 repeated)

Property Address: 15802 Talford Avenue Cleveland, Ohio 44128

47. **TITLE:** SELLER shall convey a marketable title to BUYER by general warranty deed and/or fiduciary deed, if
48. required, with dower rights released, free and clear of all liens and encumbrances whatsoever, except a) any
49. mortgage assumed by BUYER, b) such restrictions, conditions, easements (however created) and encroachments
50. as do not materially adversely affect the use or value of the property, c) zoning ordinances, if any, and d) taxes and
51. assessments, both general and special, not yet due and payable. BUYER is encouraged to obtain Owner's Title
52. Insurance Policy ("OTIP"). An OTIP is different than a lender's title Insurance Policy, which will not protect the BUYER
53. from claims and challenges on the title. SELLER shall furnish an OTIP in the amount of the purchase price, or
54. from Newman Title LLC, or Sunsmart Title, as agreed to by the parties. BUYER agrees to release and
55. discharge any and all claims and losses against The Russell Realty Company, d/b/a Russell Real Estate Services and
56. it's agents should the BUYER elect not to purchase an OTIP. I/We acknowledge and agree that I /we have (or will) select
57. and engage a title agency, title insurance company, and/or escrow/settlement company (collectively "Title Companies")
58. of my/our own choosing after conducting my/our own inquiry sufficient to provide all of the information needed to make
59. that independent decision. Accordingly, I/we acknowledge and agree that while I/we may have been introduced to
60. my/our choice of Title Companies by Russell Realty Company, d/b/a Russell Real Estate Service, or one or more of its
61. agents, employees, officers and directors (collectively "Russell"), I/we did not rely on that introduction or any
62. representation, act or non-act by Russell in deciding to engage a Title Company and, further agree that I/we hereby
63. release and hold harmless Russell from any direct or vicarious claims or liability arising from any misappropriation of
64. funds, fraud, negligence, malfeasance or any other inappropriate action(s) of the Title Company I/we selected, unless
65. I/we select Newman Title. I/we understand that this is a material term of this Disclosure and that I/we can have an
66. attorney, of my/our choosing, review same and I /we have either done so, or have chosen not to do so, on our own
67. without undue pressure by anyone. SELLER shall have thirty (30) days after notice to remove title defects. If unable
68. to do so, BUYER may either a) accept Title subject to each defect without any reduction in the purchase price or
69. b) terminate this agreement, in which case neither BUYER, SELLER or any broker shall have any further liability to each
70. other, and both BUYER and SELLER agree to sign a mutual release, releasing earnest money to BUYER.

71. **PRORATIONS:** General taxes, annual maintenance fees, subdivision charges, special assessments, city and county
72. charges, heating fuel oil/propane (if any) and tenant's rents, collected or uncollected, shall be prorated as of the
73. date the title has been recorded. Taxes and assessments shall be prorated based upon the latest available tax
74. duplicate. However, if the tax duplicate is not yet available or the improved land is currently valued as land only,
75. taxes and assessments shall be prorated based upon 35% of the selling price times the millage rate. The escrow
76. agent is instructed to contact the local governmental taxing authority, verify the correct tax value of the property as
77. of the date the title has been recorded and pay the current taxes due to the date the title has been recorded. If
78. the property being transferred is new construction and recently completed or in the process of completion at the
79. time the agreement was signed by the parties, the escrow agent is instructed to make a good faith estimate of the
80. taxes to be owed on the value of the improved property to the date the title has been recorded and reserve sufficient
81. funds in escrow from Seller's net proceeds to pay those taxes when they become due and payable after the title
82. has been recorded. The escrow agent is instructed to release the balance of the funds on reserve to SELLER
83. once they receive notice from the local county auditor that the taxes on the land and improvements have been paid
84. in full to the date the title has been recorded. SELLER and BUYER acknowledge that the latest available tax duplicate
85. may not reflect the accurate amount of taxes and assessments that will be owed. SELLER and BUYER agree to adjust
86. directly outside of escrow for any increase or decrease in valuation and the cost of all passed or levied, but not yet
87. certified, taxes and assessments, if any, prorated to the date the title has been recorded. SELLER is not aware of
88. any proposed taxes or assessments, public or private, except the following: _____
89.
90. In the event the property shall be deemed subject to any agricultural tax recoupment (C.A.U.V.), ☐ BUYER ☐ SELLER
91. agrees to pay the amount of such recoupment.

92. **CHARGES/ESCROW INSTRUCTIONS:** This agreement shall be used as escrow instructions subject to the Escrow
93. Agent's usual conditions of acceptance. The Mortgage Location Survey is to be performed by Exacta Land Surveying
94. or _____. SELLER shall pay the following costs through escrow: a) deed
95. preparation, b) real estate transfer tax, c) any amount required to discharge any mortgage, lien or encumbrance not
96. assumed by BUYER, d) title exam and one half the cost of insuring premium for Owners Title Insurance Policy, e)
97. prorations due BUYER, f) Broker's commissions, g) one-half of the escrow fee (unless VA/FHA regulations prohibit
98. payment of escrow fees by BUYER in which case SELLER shall pay the entire escrow fee). Tenant security deposits, if
99. any, shall be credited in escrow to the BUYER. The escrow agent shall withhold $400.00 from the proceeds due
100. SELLER for payment of Seller's final water and sewer bills. SELLER shall pay all utility charges to date of recording of
101. title or date of possession whichever is later. BUYER shall pay the following through escrow (unless prohibited by VA/FHA
102. regulations): a) one-half of the escrow fee, b) one half the cost of insuring premium for Owners Title Insurance Policy,
103. c) all recording fees for the deed and any mortgage, and d) a Broker's Commission of $265 for services rendered (plus

7/8/18                               07/07/2018

Property Address: 15802 Talford Avenue Cleveland, Ohio 44128

104. any amount due if an Exclusive Buyer Representation Agreement exists) payable to Russell Real Estate Services
105. (address on line 274). SELLER and BUYER hereby authorize and instruct escrow agent to send a copy of their fully
106. signed Closing Disclosure or Settlement Statement(s) to both Broker(s) listed on this Agreement promptly after closing,
107. which Broker(s) may submit to other parties to the transaction.
108. **HOME WARRANTY:** BUYER has been made aware and acknowledges that several Limited Home Warranty
109. Insurance Policies issued by numerous companies are available and that such policies have deductibles, and may
110. not cover pre-existing defects in the property, and have items excluded from coverage. BUYER ☐ does ☒ does not
111. elect to secure a Limited Home Warranty Plan issued by HMS Home Warranty or _____.
112. The cost of $ _____ shall be paid by ☐BUYER ☐SELLER through escrow.
113. **INSPECTION:** BUYER acknowledges that it has been recommended to him/her that he/she engage, at his/her
114. expense, the services of professional inspectors to inspect the premises to ascertain that the condition of the
115. premises is as called for in this agreement. This agreement shall be subject to the following Inspection(s) by a
116. qualified Inspector of Buyer's choice within the specified number of days from acceptance of binding agreement.
117. BUYER assumes sole responsibility to select and retain a qualified inspector for each requested inspection and
118. releases Broker of any and all liability regarding the selection or retention of the Inspector(s). If BUYER does not
119. elect inspections, BUYER acknowledges that BUYER is acting against the advice of Buyer's agent and broker.
120. BUYER understands that all real property and improvements may contain defects and conditions that are not
121. readily apparent and which may affect a property's use or value. BUYER and SELLER agree that the Broker(s) and
122. their agent(s) do not guarantee and in no way assume responsibility for the property's condition.
123. BUYER acknowledges that it is Buyer's own duty to exercise reasonable care to inspect and make diligent inquiry of
124. the SELLER or Buyer's Inspectors regarding the condition and systems of the property. BUYER further acknowledges
125. that the entire house was open for observation and that BUYER had an unimpeded opportunity to inspect the entire
126. house and did inspect said house. The BUYER further understands and agrees that it is not the responsibility of the
127. brokerage firms or real estate agents to inspect the property and agrees to waive all liability and hold harmless any
128. brokerage firm or real estate agent connected with this transaction.
129. Inspections required by any state, county, local government or FHA/VA do not necessarily eliminate the
130. need for the Inspections listed below.

Yes No
131. ☒ ☐  1. GENERAL HOME INSPECTION by professional inspector within __10__ days from acceptance of this offer. Paid By: SELLER ☐ BUYER ☒
132. ☐ ☒  2. SEPTIC SYSTEM INSPECTION by a professional inspector (first verify with County Regulations) within _____ days from acceptance of this offer. Paid By: SELLER ☐ BUYER ☐
133. ☐ ☒  3. WELL WATER TEST for potability, by a professional inspector within _____ days from acceptance of this offer. Paid By: SELLER ☐ BUYER ☐
134. ☐ ☒  4. WELL INSPECTION for adequate flow rate, by a professional inspector within _____ Days from acceptance of this offer. Paid By: SELLER ☐ BUYER ☐
135. ☐ ☒  5. TERMITE/WOOD DESTROYING INSECT INSPECTION by a licensed Inspector within _____ days from acceptance of this offer. Paid By: SELLER ☐ BUYER ☐
     If FHA/VA regulations prohibit the payment of Insect Inspection by BUYER, SELLER shall pay cost.
136. ☐ ☒  6. INSPECTION FOR PRESENCE OF LEAD BASED PAINT, AND/OR LEAD BASED PAINT HAZARD within ten (10) days after acceptance of the contract. Paid By: SELLER ☐ BUYER ☐
137. ☐ ☒  7. RADON INSPECTION by a professional inspector within _____ days from acceptance of this offer. Paid By: SELLER ☐ BUYER ☐
138. ☐ ☒  8. ASBESTOS INSPECTION by a professional inspector within _____ days from acceptance of this offer. Paid By: SELLER ☐ BUYER ☐
139. ☐ ☒  9. MOLD OF ANY TYPE INSPECTION by a professional inspector within _____ days from acceptance of this offer. Paid By: SELLER ☐ BUYER ☐
140. ☐ ☒  10. FOUNDATION INSPECTION by a professional inspector within _____ days from acceptance of this offer. Paid By: SELLER ☐ BUYER ☐

SELLER(S) INITIALS AND DATE: AB  7/8/18

RESIDENTIAL PURCHASE AGREEMENT 04-01-17
Page 3 of 6

BUYER(S) INITIALS AND DATE: TPC

Property Address: 15802 Talford Avenue Cleveland, Ohio 44128

Yes No
141. ☐ ☒ 11. OTHER INSPECTION(S) by a professional Inspector within _____ days from acceptance of this offer.
142. (List OTHER INSPECTIONS) _____  Paid By:  SELLER ☐  BUYER ☐
143.

144. BUYER shall within 3 days of completion of the last Inspection requested elect one of the following:
145. A) Remove the Inspection contingency accepting the property in its "AS IS" PRESENT PHYSICAL CONDITION. If the
146. property is accepted in its "AS IS" present physical condition, then BUYER agrees to sign an Amendment of
147. Contingency Removal accepting the property "AS IS";

148. B) Accept the property subject to the SELLER agreeing to have specific material defects, that were either previously disclosed
149. in writing by the SELLER or identified in a written inspection report repaired by a qualified contractor in a professional manner
150. at SELLER expense. BUYER shall provide to SELLER a copy of the Inspections report(s) and sign an Amendment to
151. the Purchase Agreement removing the inspection contingency and Identifying the defects which are to be repaired.
152. SELLER and BUYER shall have four (4) days from SELLER receipt of the written list of defects and the inspection
153. report(s) to agree in writing which defects, if any, will be corrected by SELLER. If a written Agreement is not signed by
154. SELLER and BUYER within those four(4) days, this agreement shall be null and void and SELLER and BUYER agree
155. to sign a mutual release, whereupon signing of a mutual release by SELLER and BUYER, the earnest money deposit
156. shall be returned to the BUYER without any further liability between SELLER and BUYER or to RUSSELL REAL ESTATE
157. SERVICES;

158. C) Terminate this Agreement if written inspection report(s) identify material latent defects NOT previously disclosed in writing
159. by the SELLER or any cooperating real estate broker, whereupon signing of a mutual release by SELLER and BUYER,
160. the earnest money deposit shall be returned to the BUYER without any further liability between SELLER and BUYER
161. or to RUSSELL REAL ESTATE SERVICES.

162. FAILURE TO HAVE INSPECTION(S) COMPLETED AS REQUIRED ABOVE, OR TO NOTIFY SELLER BY
163. WRITTEN NOTICE AS REQUIRED ABOVE, OF ANY DEFECTS BEFORE EXPIRATION OF THE INSPECTION
164. PERIOD SHALL CONSTITUTE A WAIVER OF SUCH DEFECTS, AND BUYER SHALL TAKE THE PROPERTY
165. AS IS" WITH RESPECT TO SUCH DEFECTS.

166. The SELLER and BUYER can mutually agree IN WRITING to extend the dates for Inspections, repairs, or to exercise
167. their right to terminate this Agreement. SELLER agree to provide reasonable access to the property for BUYER to
168. review and approve any conditions corrected by the SELLER.

169. **MEGAN'S LAW/SEX OFFENDER REGISTRATION LAW(S):** SELLER warrants that SELLER has disclosed to
170. BUYER all notices received pursuant to Ohio's sex offender law. The BUYER acknowledges that the information
171. disclosed may no longer be accurate and agrees to inquire with the local sheriff's office. BUYER agrees to assume
172. the responsibility to check with the local sheriff's office for additional information. BUYER will rely on Buyer's own
173. inquiry with the local sheriff's Office as to registered sex offenders in the area and will not rely on SELLER or any
174. real estate agent involved in the transaction to determine if a sex offender resides in the area of any property
175. BUYER may purchase.

176. **CONDITION OF PROPERTY:** BUYER has examined the property and agrees that the property is being purchased in
177. its "As Is" Present Physical Condition including any defects disclosed by the SELLER on the Ohio *Residential Property*
178. *Disclosure Form* or identified by any inspections requested by either party or any other forms or addenda made a
179. part of this agreement. SELLER agrees to notify BUYER in writing of any additional disclosure items that arise be-
180. tween the date of acceptance and the date of recording of the deed. BUYER has not relied upon any representations,
181. warranties, or statements about the property (including but not limited to its condition or use) unless otherwise
182. disclosed on this agreement or on the *Residential Property Disclosure Form*.

183. ☒ 1. BUYER acknowledges receipt of completed *Residential Property Disclosure Form* from SELLER.

184. ☐ 2. BUYER has not received *Residential Property Disclosure Form* and SELLER agrees to deliver to BUYER a copy
185. of the completed *Residential Property Disclosure Form* within three (3) days after acceptance unless the sale of the
186. property is exempt by Ohio Revised Code 5302.30 from the use of the form.

187. SELLER shall pay all costs for the repair of any utility line that the SELLER has responsibility for at the time of
188. recording of title or transfer/restoration of utilities, whichever is sooner. SELLER agrees to comply with any and

Property Address: 15802 Talford Avenue Cleveland, Ohio 44128

193. cannot agree in writing, this Agreement can be declared null and void by either party. In that event SELLER and
194. BUYER agree to sign *mutual release* with instruction to the Broker on disbursement of the earnest money.

195. **REPRESENTATIONS AND DISCLAIMERS:** BUYER acknowledges that the SELLER completed the Residential
196. Property Disclosure Form unless otherwise stated above and SELLER has not made any representations or warranties,
197. either expressed or implied, regarding the property, (except for the Ohio Residential Property Disclosure Form, if
198. applicable), and agrees to hold the Brokers and their agents harmless from any misstatements or errors made by the
199. SELLER on the form. BUYER also acknowledges and agrees that the Brokers and their agents have no obligation
200. to verify or investigate the information provided by the SELLER on that form. BUYER hereby acknowledges that
201. any representation by SELLER or the real estate agent(s) regarding the square footage of the rooms, structures
202. or lot dimensions, homeowner's fees, public and private assessments, utility bills, taxes and special assessments
203. are approximate and not guaranteed. Please list any and all verbal representations made by Brokers or their agents
204. that you relied upon when purchasing this property. none

205. **DAMAGE:** If any building or other improvements are destroyed or damaged in excess of ten percent of the purchase
206. price prior to title transfer, BUYER may either a) accept the insurance proceeds for said damage and complete this
207. transaction or b) terminate this agreement and receive the return of all deposits made. In that event, SELLER and
208. BUYER agree to sign a *mutual release*, with instruction to the Broker on disbursement of the earnest money on deposit
209. BUYER has the right to inspect this property for any reason. If such damage is less than ten percent of the purchase price,
210. SELLER shall restore the property to its prior condition and BUYER agrees to complete the purchase of the Property.

211. **ADDENDA:** The additional terms and conditions in the attached addenda ☒ Agency Disclosure Form ☒ Residential
212. Property Disclosure ☐ VA ☐ FHA ☐ FHA Home Inspection Notice ☐ Secondary Offer ☐ Condominium ☐ Short Sale
213. ☐ House Sale Contingency ☐ House Sale Concurrency ☒ Lead Based Paint (required if built before 1978)
214. ☒ Homeowner's Association ☒ Affiliated Business Arrangement Disclosure Statement ☒ Walk Through
215. ☒ Wire Fraud – Protect Yourself ☒ HMS Service Agreement Disclosure Statement ☐ Other: _____
216.
217. are made part of this Agreement. The terms and conditions of any addenda will supersede any conflicting terms
218. in the Purchase Agreement.

219. **EARNEST MONEY:** The Broker shall acknowledge receipt of the earnest money shown on line 22 to the escrow agent
220. who shall credit that amount to the Buyer's escrow account. Unless otherwise stated herein, the earnest money
221. shall be retained in the broker's trust account until after title transfer at which time it shall be applied
222. against any compensation due broker. Any amount by which the earnest money exceeds the compensation
223. due the broker shall be remitted to the escrow agent. In the event of a dispute between the SELLER and BUYER
224. regarding the disbursement of the earnest money in the Broker's trust account, the Broker is required by Ohio law
225. to maintain such funds in a trust account until the Broker receives (a) written instructions signed by the parties
226. specifying how the earnest money is to be disbursed or (b) a final court order that specifies to whom the earnest money
227. is to be rewarded. If within two years from the date the earnest money was deposited in the Broker's trust account, the
228. parties have not provided the Broker with such signed instructions or written notice that such legal action to resolve the
229. dispute has been filed, the Broker shall return the earnest money to the BUYER with no further notice to the SELLER.

230. **PERFORMANCE:** If the BUYER fails to perform this contract at the time and in the manner herein specified or
231. defaults in the performance of any of the obligations imposed by the terms hereof, SELLER may, at Seller's option,
232. treat this Agreement as null and void and earnest money shall be forfeited by BUYER in favor of SELLER. It is
233. agreed and stipulated that if BUYER defaults in his/her/their performance of this agreement, then BUYER shall be
234. obligated to pay any and all commissions due RUSSELL REAL ESTATE SERVICES. If SELLER does not perform his
235. obligations under this contract within said time, BUYER may, at his option, treat this contract as null and void and
236. receive the return of earnest money, in which case SELLER agrees to pay the commission as though the sale and
237. transfer had been fully consummated. All parties hereto hereby acknowledge receipt of a full and complete copy of
238. this Agreement. This contract shall be binding on the SELLER, the BUYER, their heirs, executors, administrators,
239. successors and assigns. State law requires that RUSSELL REAL ESTATE SERVICES has a signed mutual release
240. or court order before releasing earnest money (All parties hereby agree to sign a Mutual Release accordingly).
241. See, Earnest Money, above.

242. **FAIR HOUSING STATEMENT:** It is illegal, pursuant to the Ohio Fair Housing Law, Division (H) of Section 4112.02 of
243. the Revised Code and the Federal Fair Housing law, 42 U.S.C.A. 3601, as amended, to refuse to sell, transfer, assign,
244. rent, lease, sublease or finance housing accommodations, refuse to negotiate for the sale or rental of housing
245. accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion,
246. sex, familial status as defined in section 4112.01 of the Revised Code, ancestry, military status as defined in that
247. section, disability as defined in that section, or national origin or to so discriminate in advertising the sale or rental

SELLER(S) INITIALS AND DATE: KD 7/8/18    RESIDENTIAL PURCHASE AGREEMENT 04-01-17    BUYER(S) INITIALS AND DATE: LB 07/07/2018
Page 5 of 6

17-10441-aih    Doc 52    FILED 12/20/18    ENTERED 12/20/18 17:03:52    Page 7 of 12

Property Address: 15802 Talford Avenue Cleveland, Ohio 44128

248. of housing, in the financing of housing, or in the provision of real estate brokerage services. It is also illegal, for profit,
249. to induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry into the
250. neighborhood of a person or persons belonging to one of the protected classes.

251. **BINDING AGREEMENT:** Upon written acceptance, then either written or verbal notice of such acceptance to the last-
252. offering party, this offer and any addenda listed above shall become a legally binding agreement upon BUYER and
253. SELLER and their heirs, executors, administrators and assigns and shall represent the entire understanding of the
254. parties regarding this transaction. All counter-offers, amendments, changes or deletions to this Agreement shall be in
255. writing and be signed/initialed by both BUYER and SELLER. Facsimile or electronic signatures shall be deemed
256. binding and valid. This Agreement shall be used as escrow instructions subject to the Escrow Agent's usual conditions
257. of acceptance. If there is any conflict between the escrow's conditions of acceptance and this agreement, the
258. terms of this agreement shall prevail. For purposes of this Agreement, "days" shall be defined as calendar days.

259. This Offer is open for acceptance in writing until _____ o'clock ☐ (AM) ☐ (PM) EST, on _____, 20___.
260. This Agreement is a legally binding contract. If you have any questions of law, consult your attorney.

261. BUYER: JBC    Email: ~~ami@horizonrealty.co.il~~    X JBC A/S 12/2/18
262. Print Name: Joseph Ben Chlouch    Phone: ~~904-------~~    X JBC A/S 12/2/18
263. BUYER: _____    Email: _____
264. Print Name: _____    Address: _____
265. Date: 07/07/2018    City/State/Zip: _____

266. RUS_____ 00387521):
267. By: _____    Office: Brecksville    Phone: 440-526-9400

268. SELLER ☐ ACCEPTS the above offer and,
269. ☐ REJECTS said offer; or ☐ COUNTEROFFERS according to the above modifications initiated by SELLER.
270. Counteroffer shall become null and void if not accepted in writing on or before _____ o'clock ☐ (AM) EST
271. on _____, 20___.    ☐ (PM) EST
272. Upon final acceptance, SELLER instructs the Escrow Agent to pay from SELLER'S escrow funds upon title transfer a
273. Brokerage Commission as follows: Six    or 6 %
274. of the Purchase Price to Russell Real Estate Services, 12190 Pearl Road Strongsville, Ohio 44136. In accordance
275. with the listing agreement, SELLER will also be charged an additional commission of $265 if listed with Russell
276. Real Estate Services.
277. AND (Other Broker, if any) _____ to be paid as per Listing Agreement.
278. SELLER: X [signature]    Email: X aslade909@gmail.com
279. Print Name: X _____    Phone: X (216) 314-3686
280. SELLER: Anthony Slade    Email: _____
281. Print Name: _____    Address: _____
282. Date: 7/8/18    City/ST/ZC: _____

List Broker/Agent Information:    Selling Broker/Agent Name Information:

283. Russell Real Estate Services | 387521    Russell Real Estate Services | #0000387521
    Listing Real Estate Company | (Company OH BRKR LIC #)    Selling Real Estate Company | (Company OH BRKR LIC #)
284. Charles Amato | 334114    Alex S. Carney | 2006002228
    Listing Agent | (Agent OH RE LIC #)    Selling Agent | (Agent OH RE LIC #)
285. 440-342-5453    440-382-7720
    Listing Agent Cell Phone#    Selling Agent Phone#
286. amatochuckmj23@aol.com    alexcarneycst@gmail.com
    Listing Agent Email    Selling Agent Email
287. 440-572-3100 | 9703    440-526-9400 | 2759
    Listing Office Phone# | (Office MLS #)    Selling Office Phone# | (Office MLS

RESIDENTIAL PURCHASE AGREEMENT 04-01-17
Page 6 of 6



# Russell Real Estate Services
## AMENDMENT TO RESIDENTIAL PURCHASE AGREEMENT
## AND REMOVAL OF INSPECTION CONTINGENCIES

1  This is an Amendment to the Residential Purchase Agreement dated: 07/12/2018
2  for the purchase and sale of the property know as:

3  (Street Address) 15802 Talford Avenue

4  (City) Cleveland                                Ohio, (Zip Code) 44128

5  between Joseph Ben Clouch                                              (Buyer)

6  and Anthony Slade                                                       (Seller).

7  The following changes and/or additions are hereby mutually agreed upon by the Buyer(s) and
8  Seller(s):
9  **FINANCING:**  Buyer(s) loan commitment to be obtained on or about:

10                                      (date)                                    JBC  AS  12/2/18

11  **CLOSING:**  Funds and Documents to be placed in escrow on or before:
                                                1/24/2019
12              on or before 08/31/2018      (date) and title shall be transferred on or   JBC  AS  12/2/18
13              about on or before 08/31/18    1/24/209
14  **POSSESSION:** Seller(s) shall deliver possession to Buyer(s) on
                                                1/24/2019
15              on or before 08/31/18         (date)      ☐AM ☐PM provided the   JBC  AS  12/2/18
16              title has transferred.
17  **INSPECTION CONTINGENCIES:**

18   1. General Home Inspection      ☐Removed     ☒Removed subject to conditions listed below
19   2. Septic System Inspection     ☐Removed     ☐Removed subject to conditions listed below
20   3. Water Potability Inspection  ☐Removed     ☐Removed subject to conditions listed below
21   4. Well Flow Rate               ☐Removed     ☐Removed subject to conditions listed below
22   5. Radon                        ☐Removed     ☐Removed subject to conditions listed below
23   6. Pest/Wood Destroying Insect ☐Removed     ☐Removed subject to conditions listed below
24   7. Lead Based Paint Inspection ☐Removed     ☐Removed subject to conditions listed below
25   8. Mold                         ☐Removed     ☐Removed subject to conditions listed below
26   9. Other___                     ☐Removed     ☐Removed subject to conditions listed below
27  10. ___                          ☐Removed     ☐Removed subject to conditions listed below

28  **CONDITIONS:**
29  Price reduction of $2000 from an original agreed upon price of $50,0000 lowered to $48,000 for repairs buyer will assume.
30
31
32
33  ALL OTHER TERMS AND CONDITIONS OF THE RESIDENTIAL PURCHASE AGREEMENT TO
34  REMAIN IN FULL FORCE AND EFFECT.

35  Joseph Ben Clouch    [dotloop verified 07/25/18 3:12PM EDT KMSH-9R46-BKRR-67A]        Anthony Slade
36  BUYER                DATE                                   SELLER                    DATE

37
38  BUYER                DATE                                   SELLER                    DATE

Page 1 of 1                    Removal of Inspection Contingencies                    RRES 1/10

17-10441-aih    Doc 52    FILED 12/20/18    ENTERED 12/20/18 17:03:52    Page 9 of 12

Exhibit "B"

## A. Settlement Statement

U.S. Department of Housing and Urban Development

OMB No. 2502-0265

### B. Type of Loan

1. ☐ FHA  2. ☐ FmHA  3. ☐ Conv Unins
4. ☐ VA   5. ☐ Conv Ins  6. ☐ Seller Finance

6. File Number: 7261
7. Loan Number:
8. Mortgage Ins Case Number:

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. Name & Address of Borrower:** Joseph Ben Chiouch

**E. Name & Address of Seller:** Anthony B. Slade and Georgiana Love Slade

**F. Name & Address of Lender:** Cash

**G. Property Location:** 15802 Talford Avenue, Cleveland, OH 44128

**H. Settlement Agent Name:** Suntrust Title Agency Inc.
16280 Celle Circle
Walton Hills, OH 44146  Tax ID: 34-1937585

**Place of Settlement:** Suntrust Title Agency Inc.
16280 Celle Circle
Walton Hills, OH 44146

**I. Settlement Date:** 1/24/2019
Fund:

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract Sales Price | $50,000.00 | 401. Contract Sales Price | $50,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower | $922.25 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. County property taxes | | 406. County property taxes | |
| 107. | | 407. | |
| 108. | | 408. | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower** | $50,922.25 | **420. Gross Amount Due to Seller** | $50,000.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit or earnest money | | 501. Excess Deposit | |
| 202. Principal amount of new loan(s) | | 502. Settlement Charges to Seller (line 1400) | $4,499.25 |
| 203. Existing loan(s) taken subject to | | 503. Existing Loan(s) Taken Subject to | |
| 204. Commitment fee | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. Hold for First half 2018 Taxes | $1,500.00 |
| 207. | | 507. Hold for final Water and Sewer | $300.00 |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. County property taxes  07/01/18 thru 01/24/19 | $1,088.16 | 510. County property taxes  07/01/18 thru 01/24/19 | $1,088.16 |
| 211. | | 511. | |
| 212. | | 512. | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | $1,088.16 | **520. Total Reduction Amount Due Seller** | $7,387.41 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross Amount due from borrower (line 120) | $50,922.25 | 601. Gross Amount due to seller (line 420) | $50,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | $1,088.16 | 602. Less reductions in amt. due seller (line 520) | $7,387.41 |
| **303. Cash From Borrower** | $49,834.09 | **603. Cash To Seller** | $42,612.59 |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services;

Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. The information requested does not lend itself to confidentiality.

File No. 7261

## L. Settlement Charges

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price $50,000.00 @6 % = $3,000.00 | | | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. $3,000.00 | to | | | |
| 702. | to | Russell Real Estate Services | | |
| 703. Commission Paid at Settlement | | | $0.00 | $3,000.00 |
| 704. Administration Fee | to | Russell Real Estate Services | $265.00 | $265.00 |
| 705. Processing fee | to | | | |
| **800. Items Payable in Connection with Loan** | | | | |
| 801. Loan Origination Fee % | to | | | |
| 802. Loan Discount % | to | | | |
| 803. Appraisal Fee | to | | | |
| 804. Credit Report | to | | | |
| 805. Lender's Inspection Fee | to | | | |
| 806. Mortgage Insurance Application | to | | | |
| 807. Assumption Fee | to | | | |
| 808. Flood Certification Fee | to | | | |
| 809. Processing Fee | to | | | |
| 810. Tax Service Fee | to | | | |
| 811. Broker Fee | to | | | |
| 812. Premium Yld Sprd | to | | | |
| **900. Items Required by Lender To Be Paid in Advance** | | | | |
| 901. Interest from 1/24/2019 to 2/1/2019 @ $0/day | | | | |
| 902. Mortgage Insurance Premium for months | to | | | |
| 903. Hazard Insurance Premium for years | to | | | |
| **1000. Reserves Deposited With Lender** | | | | |
| 1001. Hazard insurance | months @ | per month | | |
| 1002. Mortgage insurance | months @ | per month | | |
| 1003. City property taxes | months @ | per month | | |
| 1004. County property taxes | months @ $160.28 | per month | | |
| 1005. Annual assessments | months @ | per month | | |
| 1006. School property taxes | months @ | per month | | |
| 1007. MUD taxes | months @ | per month | | |
| 1008. HOA Dues | months @ | per month | | |
| 1011. Aggregate Adjustment | | | | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee | to | Suntrust Title Agency Inc. | $325.00 | $325.00 |
| 1102. Abstract or title search | to | | | |
| 1103. Title examination | to | Suntrust Title Agency Inc. | | $350.00 |
| 1104. Title insurance binder | to | Suntrust Title Agency Inc. | $100.00 | |
| 1105. Wire/Overnight Fees $20.00 per incident | to | Suntrust Title Agency Inc. | $20.00 | $20.00 |
| 1106. Special Tax Search | to | Suntrust Title Agency Inc. | | |
| 1107. Attorney's fees | to | Costanzo & Lazzaro, P.L.L. | | $90.00 |
| (includes above items numbers: | | ) | | |
| 1108. Title insurance | to | Suntrust Title as Agent for General Title | $143.75 | $143.75 |
| (includes above items numbers: | | ) | | |
| 1109. Lender's coverage | $0.00/$0.00 | | | |
| 1110. Owner's coverage | $50,000.00/$287.50 | | | |
| 1111. Transfer/Conditional Filing | to | Suntrust Title Agency Inc. | $40.00 | $40.00 |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording Fees Deed $28.50 ; Mortgage ; Rel | | to Cuyahoga County Fiscal Office | $28.50 | |
| 1202. City/county tax/stamps Deed ; Mortgage | to | | | |
| 1203. State tax/stamps Deed ; Mortgage | to | | | |
| 1204. Transfer and Conveyance | to | Cuyahoga County Fiscal Office | | $200.50 |
| **1300. Additional Settlement Charges** | | | | |
| 1301. Survey | to | | | |
| 1302. Pest Inspection | to | | | |
| 1303. Cleveland Certification | to | Suntrust Title Agency Inc. | | $65.00 |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | $922.25 | $4,499.25 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement.

Joseph Ben Chlouch                                Anthony B. Slade

SETTLEMENT AGENT CERTIFICATION
The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

Georgiana Love Slade

Settlement Agent                                    Date
**Warning:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Previous Editions are Obsolete          Page 2          form HUD-1 (3/86)
                                                                        Handbook 4305.2

17-10441-aih    Doc 52    FILED 12/20/18    ENTERED 12/20/18 17:03:52    Page 12 of 12